[No. 2794.]

## DAVY CROCKETT v. THE STATE.

1. THEFT—EVIDENCE.—See evidence held insufficient to establish the identity of the animal alleged to be stolen.

2. SAME—NEW TRIAL.—Note in the statement of the case the substance of affidavits in support of a motion for new trial *held*, in view of the evidence adduced, sufficient to authorize a new trial.

3. TRANSCRIPT—PRACTICE.—It is the duty of the clerk of the trial court to copy, where he is required to do so, all records *verbatim et literatim*. He is not authorized to interpolate or omit words or sentences not appearing in the original. See the opinion for a case in point.

APPEAL from the District Court of Falls. Tried below before the Hon. B. W. Rimes.

The indictment charged the appellant with the theft of a boar hog of the value of twenty-five dollars, the property of George Brown. The theft was alleged to have been committed on the seventeenth day of January, 1883. The punishment assessed against the appellant, by a verdict of conviction, was a term of two years in the penitentiary.

George Brown testified, for the State, that the defendant lived about three-quarters of a mile distant from his house, and about three hundred yards from Tate's. In January, 1883, the witness had a very fine black and white spotted boar hog, which he valued at twenty-five dollars. When turned out, the hog would customarily remain away from the house three or four days, and then return. The hog had been missing longer than his usual time when, on January 17, witness went to look for him. In that search he got information from Tate which caused him to give up the search. The hog was marked and the left ear was scarred by dogs or worms. Witness gave no one his consent to take the hog. Witness has not seen his hog since he missed him on the occasion named.

Henry Tate testified, for the State, that on the morning of January 17 he and his wife passed the defendant's house, and saw a large fine black and spotted boar hog lying at the defendant's hog pen. On their return that night, they learned that the defendant had killed a hog that evening, and as the witness had recently missed a hog, he went over to see the defendant next morning. Witness found blood about the hog pen, and called the defendant out and asked him if he had not killed witness's hog, which the defendant denied. Witness then went off and got Jim Battle, and returned and asked the same question of defendant. Defendant replied that witness should know he had not killed witness's hog; that the hog he killed was much larger than that of witness. He showed the witness the head of a large hog, off which the hair had been scraped and the ears cut close. He then asked witness if he had ever noticed a large black and spotted boar hog running about the neighborhood. Witness replied that he had, and defendant said that that was the hog he had killed. That hog, according to the witness, was worth twenty-five dollars.

Jim Battle, for the State, corroborated the witness Tate. He

stated, further, that he identified the head shown by defendant by the scarred appearance of the left ear. It was the head of a large black and spotted boar hog which had been running in the neighborhood for some days.

Flora Crockett, wife of the defendant, testified that she was at home on the January evening when her husband, the defendant, killed a large black and spotted boar hog. That hog was one of four the defendant bought from Hayden Smith, about two weeks before, for thirty dollars. When Tate and Battle came to the house next morning, witness was in the house singeing the ears of the slaughtered hog.

Amy Howard testified, for the defense, that she was living with defendant when he killed a hog on January 17, 1883. She testified exactly as Flora Crockett did, except that she was positive that she was boiling the ears for breakfast on the morning after the hog was killed, and while Tate and Battle were at the house. She also testified that the hog was castrated.

Fannie Smith testified, for the defense, that her husband, Hayden Smith, bought some hogs about the first of January, from a man on Summers's place, and among them a large black and spotted boar. These hogs, four in number, including the boar, he shortly sold to the defendant for eighteen dollars. Her husband raised none of these hogs.

Hayden Smith testified, for the defense, that in January he sold defendant four hogs for twenty-eight dollars. One of these was a large black and white spotted boar, which witness had raised from a pig. The others witness bought on the Summers place. This witness denied that he told George Brown that the hog he sold the defendant was a small hog, and on this point Brown, in rebuttal, contradicted him.

The motion for new trial set up newly discovered evidence among other grounds. It was supported by the affidavits of three parties. That of Tom Reed set up, in substance, that late in February, 1883, he saw a large black and spotted boar hog on Bennett's place, about two and a half miles from George Brown's place.

The affidavit of John Shaw set up that at the time of this trial, or a few days before, there was running at large on the Bennett place, a little more than a mile distant from George Brown's, a large black and white spotted boar hog. Witness did not know who owned the hog.

Oliver Jackson's affidavit set up the same facts as that of

Shaw, except that he added that the hog referred to as now at large was marked with an underbit in the right ear.  The left ear appeared somewhat lacerated.

*Martin & Dickinson*, for the appellant.

*J. H. Burts*, Assistant Attorney General, for the State.

WHITE, PRESIDING JUDGE.  The hog killed by defendant is not identified positively as the hog of the prosecuting witness, George Brown.  A strong case of circumstantial evidence is made by the testimony of the State's witnesses, and, if no doubt had been thrown upon it, it would unquestionably have been sufficient to support the verdict and judgment.  It is also true that the defendant's witnesses contradicted each other in several particulars.  We concede, as stated, that the case made by the State was strong and only lacked a positive identification of the hog to make it conclusive.  On his motion for a new trial defendant produced the affidavits of three witnesses to facts which if true were, in connection with defendant's evidence, almost if not quite as strong as the case made by the State, to prove that Brown's hog had not been killed by defendant at all, but was alive on the Bennett farm within a few miles of Brown's home some time after defendant killed the hog for which he was tried, and up to within a very few days of the trial.

We are of opinion the court, under the circumstances of the case, should have granted the new trial.

There is another matter made to appear by the record and complained of by counsel for appellant in the brief, which we feel called upon to notice.  After the verdict had been agreed upon it was returned into court and received and entered upon the minutes.  In making up the judgment the clerk has incorporated into it, as he is required to do (Code Crim. Proc., Art. 791), a verdict which he says is the one returned by the jury in the case.  But, when compared with the verdict first received and entered upon the minutes, the two are found to not correspond in several particulars.  Words in the one are omitted in the other, and some words are used in the verdict incorporated into the judgment which are not to be found in the other verdict.  If after its return the verdict was amended, then the the record should have shown it, so that the apparent incongruity would have been explained.  If it was not amended and the

clerk in setting it out has not copied it correctly (which his use of quotation marks most clearly implies), but has substituted other words, then his action is inexcusable, and such unwarranted tampering with the verdict should receive at the hands of the court the condemnation it merits. It is the duty of the clerk to copy, where he is required to do so, all records *verbatim et literatim*, and especially so when he assumes to use quotation marks, which indicate exact language.

Because the court erred in overruling defendant's motion for a new trial, based upon the newly-discovered evidence, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Opinion delivered May 23, 1883.